[No. 71071-6. En Banc.]
Argued January 29, 2002.     Decided July 18, 2002.

ROBERT E. BESEL, *Petitioner*, v. VIKING INSURANCE COMPANY OF WISCONSIN, *Respondent*.

*Michael J. Riccelli*, for petitioner.

*James B. King* (of *Keefe, King & Bowman, P.S.*), for respondent.

*Bryan P. Harnetiaux, Gregg L. Tinker*, and *Debra L. Stephens* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

JOHNSON, J. — This case involves the issue of whether a covenant not to execute a judgment against an insured

precludes a showing of harm where the insured has settled a claim his insurance company refused in bad faith to settle. We are further asked to determine whether such a settlement amount is the proper measure of damages when a trial court approves it as reasonable. We hold a covenant not to execute does not preclude a showing of harm to the insured and a settlement approved as reasonable is the proper measure of damage caused by an insurance company's bad faith.

## FACTS

On August 18, 1990, Mark Ralston, while under the influence of alcohol and attempting to elude police, lost control of his speeding truck and crashed into a tree. One of his passengers, Robert Besel, suffered extensive injuries to his left foot and lesser injuries to his right leg and head. Besel incurred approximately $20,000 in medical bills and lost approximately $10,000 in income.

On August 20, 1990, Ralston notified his insurer, Viking Insurance Company of Wisconsin, of the accident. Besel hired attorney Michael Riccelli to represent him. Riccelli telephoned Viking several times and wrote letters to the insurer on October 15 and November 28 demanding Ralston's policy limits. Viking did not respond for almost four months.

On December 10, 1990, Riccelli was contacted by a Viking representative who informed him Ralston's coverage limits were $25,000 per person/$50,000 per accident. On January 8, 1991, Riccelli sent a third letter to Viking detailing Besel's medical costs and demanding tender of Ralston's per individual policy limits. When Viking, again, did not respond, Riccelli sent a fourth letter on February 28, 1991 demanding Viking tender the full amount of its per individual policy limits by March 8, 1991. On March 12, Riccelli mailed Viking yet another letter and included copies of his previous correspondence to Viking because Viking had lost Besel's claim file. On March 13, Riccelli filed a lawsuit

against Ralston on Besel's behalf. Unaware of his own liability, Ralston did not respond to the summons and complaint and an order of default was entered against him on April 4, 1991.

On April 4, Riccelli received a "speed letter" from Viking stating it refused to settle Besel's claim because the combined claims of the three passengers injured by Ralston might exceed the total coverage limit of $50,000. From August 1990 until April 1991, Viking did not advise Ralston that Besel offered to settle within policy limits and did not inform Ralston of his potential personal liability. Shortly after April 4, Viking retained an attorney to represent Ralston. On August 27, 1991, the trial court set aside the order of default with respect to the issue of Besel's damages, but allowed it to stand insofar as it established Ralston's negligence as the proximate cause of the accident.

Approximately eight months later, on April 6, 1992, Besel settled his claim against Ralston. In return for agreeing to a stipulated judgment of $175,000 and receiving Besel's promise not to execute it against him, Ralston agreed to assign all of his claims against Viking to Besel, thus enabling Besel to bring first party causes of action against Viking (a covenant judgment). The covenant judgment was expressly contingent on a finding and entry of an order of reasonableness consistent with criteria established in *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339, 812 P.2d 487 (1991). On July 10, 1992, the trial court entered an order finding the settlement reasonable. Viking finally tendered the policy limits to Besel on August 21, 1992.

Acting in his own right and as assignee of all of Ralston's claims against Viking, Besel filed suit against Viking on July 28, 1993. He brought claims for negligence, breach of contract, bad faith, negligent and/or fraudulent misrepresentation, violation of the Consumer Protection Act (CPA) and the tort of outrage, and sought $150,000 in satisfaction of the unpaid balance of the judgment entered against Ralston.

The trial court dismissed all of the claims Besel asserted in his own right. Viking moved for summary judgment on all the claims Besel asserted as Ralston's assignee. Besel, as assignee of Ralston's claims, cross motioned for summary judgment on the bad faith and CPA claims. During argument on the summary judgment motions, Viking disclaimed any dispute with the reasonableness of the settlement amount. The trial court granted Viking's motion except for the bad faith and CPA claims. However, the trial court limited any award of damages on the bad faith claim to the contractual policy limit of $25,000, which Viking had already paid. Besel appealed.

The Court of Appeals reversed the trial court on the bad faith claim holding, as a matter of law, Viking had acted in bad faith. *Besel v. Viking Ins. Co. of Wis.*, 105 Wn. App. 463, 478, 21 P.3d 293 (2001). The Court of Appeals also reversed the trial court on the issue of damages for Viking's bad faith, holding that damages were not necessarily limited to the $25,000 policy limits. The court declined to decide, however, if the appropriate measure of Besel's damages was the amount of the stipulated judgment. Instead, it remanded the case for damages to be determined at trial. The Court of Appeals did not suggest any criteria by which the trial court could measure Ralston's harm. Besel sought and we granted review to determine whether a covenant judgment approved by a trial court as reasonable is the proper measure of damages when an insurer acts in bad faith.

## ANALYSIS

We have long recognized if an insurer acts in bad faith by refusing to effect a settlement for a small sum, an insured can recover from the insurer the amount of a judgment rendered against the insured, even if the judgment exceeds contractual policy limits. *Evans v. Cont'l Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952). This is the majority rule in the United States. *See* STEPHEN S. ASHLEY, BAD FAITH ACTIONS: LIABILITY AND DAMAGES § 8:03 (2d ed. 1997); 14 LEE R.

Russ & Thomas F. Segalla, Couch on Insurance § 204:4 (3d ed. 1999); 1 Allan D. Windt, Insurance Claims and Disputes: Representation of Insurance Companies and Insureds §§ 5:12, 5:13, 5:21 (4th ed. 2001).

The same rule applies when an insured settles in similar circumstances. An insured may independently negotiate a settlement if the insurer refuses in bad faith to settle a claim. In such a case, the insurer is liable for the settlement to the extent the settlement is reasonable and paid in good faith. *Evans*, 40 Wn.2d at 628. Because the insured in *Evans* did not cross-appeal from the trial court's ruling limiting his recovery to policy limits, we did not address the issue of an insurer's liability for settlement amounts in excess of policy limits. Nonetheless, *Evans* has been read to hold "that, when an insurer refuses, in bad faith, to settle a tort claim asserted by an injured party, the insured could settle the tort claim against him, which far exceeded his liability coverage, and recover from the insurer the amount paid in settlement in excess of the limits of the policy." *Murray v. Aetna Cas. & Sur. Co.*, 61 Wn.2d 618, 620-21, 379 P.2d 731 (1963). This case presents a single variation of this long-established rule: the assignment of the insured's claim and a covenant not to execute against the insured. Viking argues Ralston suffered no harm from its bad faith because Besel promised not to execute the judgment against Ralston.[1] Viking argues that Ralston, having suffered no harm, had no bad faith claim to assign to Besel.

We have already heard and addressed Viking's argument in *Safeco Insurance Co. of America v. Butler*, 118 Wn.2d 383, 823 P.2d 499 (1992). In *Butler*, the insurance company tendered a defense under a reservation of rights. The insured and the injured victim reached a settlement. The insured stipulated to damages of $3 million and judgment was entered accordingly. The insured also assigned his first party rights to any bad faith claim to the injured victim. In return, the victim agreed not to execute the judgment

---

[1] Viking did not file a supplemental brief with this court.

against the insured. As in this case, the victim in *Butler* agreed to limit his recovery to policy proceeds or any proceeds recoverable from a bad faith claim against the insurer. Responding to the insurance company's argument that the insured suffered no harm from the insurer's potential bad faith, we held "[an] agreement not to execute does not preclude a showing of harm." *Butler*, 118 Wn.2d at 397. Nearly seven years before *Butler* was decided, we determined when a carrier acts in bad faith, "it is in no position to argue that the steps the insured took to protect himself [or herself] should inure to the insurer's benefit." *Greer v. N.W. Nat'l Ins. Co.*, 109 Wn.2d 191, 204, 743 P.2d 1244 (1987). Washington courts have properly recognized that "a covenant not to execute coupled with an assignment and settlement agreement is not a release permitting the insurer to escape its obligation." *Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 198, 698 P.2d 90 (1985); *see also Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 741 P.2d 1054 (1987). A covenant not to execute coupled with an assignment and settlement agreement does not release a tortfeasor from liability; it is simply "an agreement to seek recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured." *Butler*, 118 Wn.2d at 399.

Viking further argues *Butler*'s presumption of harm should not apply because *Butler* involved a defense tendered under a reservation of rights. This is a distinction without a difference. The principles in *Butler* do not depend on how an insurer acted in bad faith. Rather, the principles apply whenever an insurer acts in bad faith, whether by poorly defending a claim under a reservation of rights, *Butler*, 118 Wn.2d at 390-92; refusing to defend a claim, *Kirk v. Mt. Airy Insurance Co.*, 134 Wn.2d 558, 565, 951 P.2d 1124 (1998); or failing to properly investigate a claim, *Coventry Associates v. American States Insurance Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998).

We are aware that an insured's incentive to minimize the amount of a judgment will vary depending on whether the

insured is personally liable for the amount. Because a covenant not to execute raises the specter of collusive or fraudulent settlements, the limitation on an insurer's liability for settlement amounts is all the more important. A carrier is liable only for reasonable settlements that are paid in good faith. *Evans*, 40 Wn.2d at 628.

We have identified various factors to guide the determination of whether a settlement agreement involving multiple defendants and contributory fault is reasonable. *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *overruled on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). These factors are:

> "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

*Glover*, 98 Wn.2d at 717-18 (quoting amicus brief).

Applying the criteria we identified in *Glover*, the *Chaussee* court sought to define what constituted a reasonable settlement in the context of a covenant judgment. The *Chaussee* court acknowledged it faced a settlement different from that in *Glover* but saw "little difference between a determination of reasonableness in the context of the contribution statute and [a covenant judgment]. In both settings, similar concerns exist regarding the impact of a settlement on other parties and the risk of fraud or collusion." *Chaussee*, 60 Wn. App. at 512. We agree.

We hold the amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable under the *Chaussee* criteria. This approach promotes reasonable settlements and discourages fraud and collusion. Furthermore, using the amount of a covenant

judgment to measure tort damages in this context makes sense in light of our long-standing requirement that such settlements be reasonable. If a reasonable and good faith settlement amount of a covenant judgment does not measure an insured's harm, our requirement that such settlements be reasonable is meaningless. Finally, the *Chaussee* criteria protect insurers from excessive judgments especially where, as here, the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness. ·

In this case, the trial court found the settlement between Ralston and Besel to be reasonable. Viking's attorneys were notified of the reasonableness hearing and afforded ample opportunity to respond. Viking's only response was to complain the settlement violated Ralston's duty to cooperate in Viking's "effort to investigate the accident or loss, settle any claims . . . and defend [Ralston]." Clerk's Papers at 190. Viking has not established the settlement was unreasonable and, in fact, conceded to the court that the settlement amount was reasonable.

At the reasonableness hearing, the trial court specifically addressed the *Chaussee* criteria. The court found Besel could likely prove the accident caused him severe injuries; Ralston's liability was clear, absolute, and indefensible; the risk and expense to Ralston of continued litigation was extreme and Ralston could not pay any judgment against him; Besel had thoroughly investigated and prepared his case; the settlement was reached through arm's-length negotiations; and there were no other parties to the litigation whose interests were affected.[2] Once the court determined the covenant judgment was reasonable, the burden shifted to Viking to show the settlement was the product of fraud or collusion. Having failed to meet this burden, Viking was liable for the full settlement amount. Insurers

---

[2] The trial court combined several of the *Chaussee* criteria. We believe this is appropriate, as no single criterion controls and trial courts must exercise their discretion in applying the criteria. All nine criteria will not necessarily be relevant in every case.

can avoid this result in the future by acting in good faith. In this case, from the date Viking became aware of Ralston's accident until the date prior to Viking notifying Riccelli it refused to settle Besel's claim within policy limits, it was within Viking's power to limit its liability by acting in good faith. By choosing to act in bad faith, Viking accepted that it would injure its insured and be held responsible for that injury. Had Viking simply tendered the policy limits to Besel, whose injuries clearly exceeded those limits, this lawsuit would not have occurred. Because Viking acted in bad faith, Viking is liable for the entire amount of the settlement.

We reverse the Court of Appeals. We remand this case to the trial court with instructions to enter a judgment against Viking in the amount of $160,238 ($175,000 plus $10,000 (unchallenged damages award for CPA claim) plus $238 (trial court's award of costs and statutory attorney fees) minus $25,000 (the amount Viking already paid)). Statutory interest should be calculated on the liquidated amounts. *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32-33, 442 P.2d 621 (1968). We also award costs and reasonable attorney fees on appeal.

ALEXANDER, C.J., and SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.