[No. 55342-9-I.   Division One.   May 8, 2006.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant*, v. DAN PAULSON CONSTRUCTION, INC., ET AL., *Respondents*.

804

*Brent W. Beecher* and *James M. Beecher* (of *Hackett, Beecher & Hart*) and *K.C. Webster*, for appellant.

*Robert B. Gould* and *Brian J. Waid* (of *Law Offices of Robert B. Gould*), for respondents.

¶1 BAKER, J. — This case arises from an arbitration claim brought by Joseph and Karen Martinelli against Dan Paulson Construction, Inc. (Paulson), for alleged construction defects in the Martinellis' home. Paulson's commercial liability insurance company, Mutual of Enumclaw (MOE), agreed to defend Paulson under a reservation of rights regarding coverage issues. Before Paulson and the Martinellis commenced arbitration, MOE filed a declaratory judgment action and issued a subpoena duces tecum and interrogatories to the arbitrator seeking information that would help MOE determine which parts of any arbitration award would be insured and which would not. Paulson and the Martinellis subsequently entered into a stipulated arbitration award for $1.3 million, whereby Paulson assigned its coverage and bad faith claims against MOE to the Martinellis in return for a covenant not to execute. MOE then dismissed the first declaratory judgment complaint and filed this declaratory judgment action to determine insurance coverage issues. On cross motions for partial summary judgment, the trial court found that MOE's subpoena duces tecum, interrogatories, and ex parte cover letter to the arbitrator constituted bad faith but because Paulson had not suffered harm, MOE was not estopped from denying coverage for uninsured claims. Upon reconsideration, the court ruled that attorney fees incurred by Paulson in opposing the subpoena to the arbitrator constituted sufficient harm to estop MOE from denying coverage. The court then ruled that the arbitration award was reasonable and entered judgment against MOE for the full award with interest at 12 percent, plus attorney fees and expenses. The trial court also ruled that MOE's refusal to pay any portion of the arbitration award pending resolution of coverage issues did not violate the Consumer Protection Act.[1] MOE appeals, and the Martinellis cross-appeal.

---

[1] Ch. 19.86 RCW.

I

¶2 Paulson contracted to build a home on San Juan Island for the Martinellis in 1998. The final construction price was approximately $1,725,000. Paulson and the Martinellis arbitrated their dispute concerning the construction price. The Martinellis then sued their architects for alleged construction defects and settled in 2003 for an undisclosed amount.

¶3 In August 2002, the Martinellis filed a second arbitration claim against Paulson, also asserting construction defects. MOE assigned defense counsel to represent Paulson under a reservation of rights regarding insurance coverage issues. Thus, there were two separate groups of MOE personnel working on the case: Paulson's assigned defense counsel team and MOE's insurance coverage analysis team. Paulson also retained private defense counsel.

¶4 MOE maintained that some of the claims against Paulson might be barred by certain policy exclusions and that MOE needed to know what damage was allegedly caused by each entity that performed work on the Martinelli home in order to determine the extent and scope of coverage. Soon after the Martinellis filed their arbitration claim, MOE asked Paulson and the Martinellis to provide information concerning the alleged defects, which they made available to MOE. A year later, in August and September 2003, MOE asked Paulson to provide additional information relevant to the arbitration claims. Paulson's attorney offered some documents "as a courtesy," asserting that MOE did not have a right to them and that document production should not be construed as a concession that any alleged defect was valid or that the Martinellis' claim established an appropriate segregation of any arbitration award.

¶5 In October 2003, counsel for Paulson urged MOE to accept the Martinellis' offer to settle the case for $1 million. The letter noted that Paulson "is personally very troubled

that a large arbitration award will ruin his small construction company and cause it to shut its doors," and that accepting the offer would save "enormous costs and expenses." MOE countered with an offer to settle for $550,000, but the Martinellis declined.

¶6 MOE requested permission from Paulson and the Martinellis to be allowed to intervene in the upcoming arbitration so that MOE could promptly determine coverage issues, but Paulson and the Martinellis objected. MOE asked to be able to attend the arbitration proceeding as a nonparty observer, but the parties refused. MOE made no further attempts to intervene or appear at the arbitration. Instead, MOE filed a declaratory judgment action against the Martinellis and Paulson seeking information on the claims, but the complaint was not served.

¶7 On December 30, 2003, MOE served arbitrator J. Richard Manning with a subpoena duces tecum designed to obtain information that would assist MOE in segregating insured and uninsured elements of the arbitration award, if any. Accompanying the subpoena was a cover letter in which MOE briefly sought to explain why the information requested in the subpoena was necessary to resolve coverage issues. MOE did not send copies to counsel for Paulson or the Martinellis until four days before the arbitration was scheduled to begin. The arbitrator, Paulson, and the Martinellis opposed the subpoena and demanded that it be withdrawn. Over the Martinellis' objections, MOE sent a second letter to the arbitrator abandoning some of the interrogatories but reiterating its position that the subpoena was appropriate and legal under the circumstances. Paulson incurred unspecified costs for attorney fees and expenses for private counsel to oppose MOE's subpoena to the arbitrator.

¶8 The arbitration hearing commenced on January 6, 2004. Paulson was represented by defense counsel assigned by MOE. On January 8, 2004, MOE learned that Paulson and the Martinellis had entered into a stipulation for a lump sum arbitration award at Paulson's request. On Janu-

ary 12, 2004, Paulson and the Martinellis entered into a stipulated arbitration award of $1,300,000. The arbitrator approved the award and, at the request of the parties, found that it was reasonable. Paulson assigned its contract indemnification and bad faith claims against MOE to the Martinellis and the Martinellis entered a covenant not to execute against Paulson. The superior court confirmed the award on February 2, 2004 and found that the award was reasonable, but did not explain the basis for that finding. On February 4, 2004, the Martinellis, as assignees of Paulson, made demand upon MOE to pay any undisputed, insured portions of the damages. MOE acknowledged that some of the claims were covered under the policy but declined to remit any payments to the Martinellis until it ascertained which portions of the arbitration award were insured and which were not.

¶9 In late January 2004, MOE struck its subpoena, dismissed the original declaratory judgment action, and filed a new complaint for declaratory judgment requesting the court to determine which portions of the arbitration award were insured under the MOE/Paulson contract and which were not insured. The parties filed cross motions for partial summary judgment. The trial court initially ruled that MOE's subpoena and cover letter to the arbitrator constituted bad faith but that MOE was not estopped from denying coverage because MOE had rebutted the presumption of harm. The court further ruled that MOE's failure to settle the case within the policy limits or to pay any portion of the award pending litigation of coverage issues was not bad faith and that the stipulated award was reasonable. The court deferred ruling on the issue of which party bears the burden of proof regarding the subcontractor exception to an exclusion in the contract. The Martinellis then moved for partial reconsideration on the coverage by estoppel issue, arguing that attorney fees incurred by Paulson in opposing MOE's subpoena constituted sufficient harm to create coverage by estoppel. The court agreed and entered an order estopping MOE from denying coverage for the

entire stipulated award. The court later entered a judgment nunc pro tunc in favor of the Martinellis for $1.3 million plus attorney fees and expenses, with interest. Because issues remain to be litigated, the parties sought and obtained a CR 54(b) order certifying the judgment as final and staying further proceedings pending decision by this court. MOE now appeals and the Martinellis cross-appeal.

## II

¶10 This court reviews an order on a motion for summary judgment de novo.[2] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

¶11 MOE contends that sending a subpoena and cover letter to the arbitrator did not constitute bad faith because these actions were not unreasonable, frivolous, or unfounded. MOE argues that its insured's actions created an untenable dilemma for MOE of either paying the entire amount of a stipulated, lump sum award or being accused of bad faith if its refusal to immediately do so led to the insured's business failure. The Martinellis argue that the subpoena and cover letters were improper, unnecessary, and prejudicial.

¶12 Both insurer and insured are obligated to exercise good faith.[4] An insurer has an enhanced obligation to its insured when defending under a reservation of rights.[5] In *Tank v. State Farm Fire & Casualty Co.*,[6] our

---

[2] *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 483, 78 P.3d 1274 (2003).

[3] CR 56(c).

[4] RCW 48.01.030.

[5] *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 387, 715 P.2d 1133 (1986).

[6] 105 Wn.2d 381, 715 P.2d 1133 (1986).

Supreme Court established four criteria for determining whether an insurer has fulfilled this obligation:

First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. . . . Third, the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit. . . . Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.[7]

Because the insurer need not put the insured's interests above its own, but rather on an equal footing, "something less than a true fiduciary relationship exists between the insurer and the insured."[8]

¶13 The Martinellis' argument hinges primarily on the fourth *Tank* criterion: by issuing a subpoena and ex parte cover letter to the arbitrator in an attempt to obtain information that would allow it to determine which portions of any arbitration award were insured and which were not, MOE potentially prejudiced the arbitration and demonstrated a greater concern for its own interest than for Paulson's.

¶14 We hold that MOE's actions in this case did not amount to bad faith. When the insured and insurer cannot agree as to coverage issues, the dispute is commonly resolved through a declaratory judgment action. However, Paulson informed MOE that he could be put out of business if the Martinellis prevailed at arbitration and attempted to execute on the judgment. And, if MOE had litigated the coverage issues prior to the Paulson/Martinelli arbitration, Paulson's defense in the arbitration would have been harmed and Paulson could establish a bad faith claim against MOE. But if MOE waited until after the arbitration

---

[7] *Tank*, 105 Wn.2d at 388.

[8] *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992).

concluded to file a declaratory judgment action, it would not be able to challenge the reasonableness of the stipulated arbitration award except by showing that it was the product of fraud or collusion.[9] MOE was thus forced to decide immediately how it would proceed prior to the arbitration.

¶15 MOE strongly suspected that Paulson would seek an undifferentiated lump sum award and then assign its claims to the Martinellis in exchange for a covenant not to execute, thereby absolving himself of personal liability and depriving MOE of the information it needed to determine which portions of the damage award, if any, were for covered claims.[10] MOE therefore sought permission from the parties to attend the arbitration hearing, but this option was foreclosed when its request was rebuffed. The Martinellis argue that MOE should have moved to intervene in the arbitration proceedings. But it is extremely unlikely that the arbitrator would have allowed this over the objection of the parties.[11] Moreover, this argument is disingenuous given that the Martinellis fault MOE for injecting insurance issues into the arbitration via the subpoena.

¶16 MOE realized that if it did nothing, the arbitration would likely end in a lump sum settlement award which MOE might well be forced to pay in its entirety, regardless of whether only part of the award was based on covered claims. The Martinellis argue that there was no evidence

---

[9] *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 739, 49 P.3d 887 (2002).

[10] MOE did obtain information from Paulson and the Martinellis that allowed it to make a preliminary determination that some of the Martinellis' claims were covered under Paulson's policy, but this did not tell MOE which portions of the arbitration award, if any, were based on covered claims.

[11] American Arbitration Association (AAA) Rule R-24 provides that "[t]he arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any person other than a party and its representative." AM. ARBITRATION ASS'N, CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURE (INCLUDING PROCEDURE OF LARGE, COMPLEX CONSTRUCTION DISPUTES), Rule R-24 *Attendance at Hearings* (amended and effective Sept. 15, 2005).

that MOE's hand was forced by the lump sum settlement award because MOE did not yet know about that stipulation when it issued its subpoena to the arbitrator. But MOE was justified in anticipating that this would occur, and Paulson's private counsel later admitted that he sought a lump sum settlement to minimize Paulson's liability exposure.

¶17 Paulson's strategy was not legally improper, but it did force MOE to face two unreasonable options: risking a bad faith claim by litigating coverage issues prior to the arbitration or paying the entire settlement amount regardless of whether it was based on covered claims. As a last resort, MOE chose a third option: the subpoena and cover letters to the arbitrator. This tactic, while somewhat clumsy, did not amount to bad faith. The ex parte cover letters were improper, and we do not accept MOE's argument that issuing a subpoena to an arbitrator is analogous to proposing special interrogatories to a jury, which has been allowed in certain cases where the interest of the insured will not be compromised.[12] Nevertheless, MOE had a reasonable need to know the elements of a potential damage award. An insurer's enhanced duty to its insured when defending under a reservation of rights does not encompass a duty to stand by and do nothing while its insured strategically eliminates his personal liability by negotiating a lump sum settlement and assigning his claims, while simultaneously preventing the insurer from determining which portions of the settlement award are covered and which are not.

¶18 We further hold that the trial court erred in finding that the Martinellis were harmed by MOE's actions. "[H]arm is an essential element of an action for an insurer's bad faith handling of a claim under a reservation of rights."[13] Once there has been a finding of bad faith, a rebuttable presumption of harm arises. The insurer can rebut the

---

[12] *Fid. Bankers Life Ins. Co. v. Wedco, Inc.*, 102 F.R.D. 41, 44 (D. Nev. 1984); *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1324 (S.D. Ala. 2003).

[13] *Butler*, 118 Wn.2d at 394.

presumption of harm by showing by a preponderance of the evidence that its acts did not harm or prejudice the insured. If the insured prevails on the bad faith claim, the insurer is estopped from denying coverage.

¶19 The trial court initially found that MOE rebutted the presumption of harm, noting that the arbitrator and the parties all agreed to continue with the arbitration despite the subpoena and cover letters, that the difference between a lump sum settlement award and a differentiated award did not lead to a different financial outcome for Paulson, that the $1.3 million award came well within the policy limits, and that any affect on Paulson's credit rating or reputation would have occurred whether Paulson entered into a stipulated agreement or not. However, upon reconsideration, the trial court found that the attorney fees incurred by Paulson in challenging the subpoena constituted concrete evidence of harm, thereby creating coverage by estoppel. Therefore, the issue is whether relatively minor attorney fees incurred in the declaratory judgment action to object to the issuance of a subpoena are sufficient to demonstrate harm and create coverage by estoppel, where MOE would be forced to pay a large stipulated settlement award regardless of coverage issues.

¶20 MOE acknowledges that Washington courts have imposed coverage by estoppel as a remedy where the insurer acts in bad faith while handling a claim under a reservation of rights.[14] However, MOE argues that these cases are limited to situations where the insurer's bad faith conduct harmed or prejudiced the insured regarding defense of the underlying tort lawsuit. Because the subpoena and cover letters did not increase Paulson's economic exposure to the Martinellis, but merely caused Paulson to expend limited attorney fees in opposing the subpoena, MOE contends it is not the type of action that should give rise to coverage by estoppel.

---

[14] *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002); *Besel*, 146 Wn.2d at 737; *Butler*, 118 Wn.2d at 392.

¶21 The Martinellis, relying substantially on broad language in *Safeco Insurance Co. of America v. Butler*[15] and *Besel v. Viking Insurance Co. of Wisconsin*,[16] argue that MOE failed to rebut the presumption of harm caused when Paulson was forced to incur attorney fees and expenses because Washington courts do not qualify the coverage by estoppel remedy based on the size or nature of the harm.[17]

¶22 In *Butler*, Safeco assumed the insured's defense under a reservation of rights, asserting that coverage did not exist where the injuries did not result from an accident but were caused by the insured's intentional conduct.[18] The Butlers asserted numerous acts as evidence that Safeco handled the defense of the tort claim in bad faith.[19] Our Supreme Court held that if the insured establishes that the insurer acted in bad faith, then harm is presumed and the insurer has the burden of rebutting the presumption of harm by showing that its acts did not harm or prejudice the insured.[20] Moreover, "where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage."[21] In *Besel*, the insurer argued that the *Butler* presumption of harm should not apply where the defense was not tendered under a reservation of rights. Our Supreme Court rejected that argument, holding that "[t]he principles in *Butler* do not depend on how an insurer acted in bad faith. Rather, the principles apply whenever an insurer acts in bad faith, whether by

---

[15] 118 Wn.2d 383, 823 P.2d 499 (1992).

[16] 146 Wn.2d 730, 49 P.3d 887 (2002).

[17] As a preliminary matter, we reject the Martinellis' assertion that this and several other issues are precluded from appellate review because MOE did not assign error to specific findings and conclusions set forth in summary judgment orders. Findings of fact and conclusions of law are superfluous in summary judgment proceedings, and a litigant need not assign error to superfluous findings. *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243 (1991).

[18] *Butler*, 118 Wn.2d at 387.

[19] *Butler*, 118 Wn.2d at 395.

[20] *Butler*, 118 Wn.2d at 394.

[21] *Butler*, 118 Wn.2d at 392.

poorly defending a claim under a reservation of rights, refusing to defend a claim, or failing to properly investigate a claim."[22]

¶23 These cases do not directly address the situation here. In *Butler*, the insured made a clear showing of bad faith and prejudice in investigation and defense of the underlying tort lawsuit, including failure to notify; delayed investigation that favored the insurer at the insured's expense; and commingling the tort defense and coverage action files.[23] And in *Besel*, the insurer unpersuasively argued that the insured suffered no bad faith because he was protected by a covenant not to execute.[24] But here, the alleged harm rests solely on minor attorney fees incurred in the declaratory judgment action to challenge a subpoena. The same or greater fees would have been incurred if MOE had formally moved to intervene in the arbitration proceeding, which the Martinellis assert MOE should have done.

¶24 Furthermore, unlike in *Butler*, the alleged harm stemmed from MOE's attempt to determine coverage issues rather than from bad faith in defending the underlying tort lawsuit. As Justice James M. Dolliver pointed out in his dissent in *Butler*, the majority opinion does not explain the nature of the presumed harm.[25] If harm includes easily provable economic loss such as attorney fees, there is no need to presume those losses; and if it broadly encompasses the entire penumbra of losses, then it is unreasonable to presume that harm because the insurer can never rebut it.[26] We agree with MOE that *Butler* and *Besel* do not address the circumstances present in this case. If coverage by estoppel is imposed here, the remedy would grossly exceed the alleged harm. The amount of a covenant judgment is the presumptive measure of an insured's harm

---

[22] *Besel*, 146 Wn.2d at 737 (citations omitted).

[23] *Butler*, 118 Wn.2d at 395.

[24] *Besel*, 146 Wn.2d 736-37.

[25] *Butler*, 118 Wn.2d at 406 (Dolliver, J., dissenting).

[26] *Butler*, 118 Wn.2d at 406-07 (Dolliver, J., dissenting).

caused by an insurer's tortious bad faith if the covenant judgment is reasonable.[27] Where the damages greatly outweigh the relatively minor economic harm, the remedy becomes more punitive than equitable.

¶25 The trial court's original letter opinion was correct on this issue: The subpoena and ex parte cover letter did not harm Paulson or the Martinellis. They found out about MOE's actions prior to the commencement of the arbitration. The parties were unhappy about this development, but they specifically agreed to allow the arbitration to go forward as planned. They were not prejudiced by MOE's actions. The trial court's decision to reverse itself and find that the attorney fees constituted harm is an unwarranted extension of the doctrine of coverage by estoppel.

¶26 In their cross-appeal, the Martinellis contend that MOE's refusal to pay undisputed, covered portions of the stipulated arbitration award violated WAC 284-30-330(6), which requires that insurers "effectuate prompt payment of property damage claims to innocent third parties in clear liability situations." They assert that this constitutes an independent basis to affirm the trial court's finding of bad faith and coverage by estoppel. We disagree. Although MOE admitted that some of the Martinellis' claims are likely to be covered, MOE still does not know whether any portion of the arbitration award was based on covered claims. MOE does not have this information because Paulson and the Martinellis agreed to a lump sum settlement award and refused to allow MOE to attend the arbitration. "Clear liability" has not been established. The Martinellis cannot tactically prevent MOE from learning what portions of the stipulated award may be insured and then assert bad faith when MOE refuses to pay until the coverage issues are resolved.

¶27 We hold that MOE's actions did not amount to bad faith and that MOE rebutted the presumption of harm. Accordingly, we reverse the trial court's order of summary

---

[27] *Besel*, 146 Wn.2d at 737-38.

judgment imposing coverage by estoppel and vacate the judgment against MOE. We also reverse the trial court's award of attorney fees and expenses to the Martinellis.[28] Consequently, we do not need to decide whether the stipulated arbitration award and subsequent judgment were reasonable.[29] Nor do we reach the question of whether the trial court applied the proper postjudgment interest rate to the judgment. We also decline MOE's request that we determine which party carries the burden of proving liability coverage under the subcontractor exception to a coverage exclusion pending discovery on contract claim issues. This issue is peripheral to the issues presently before the court, and any opinion on this issue would be purely advisory at this time.

¶28 Reversed.

SCHINDLER, A.C.J., and AGID, J., concur.

Reconsideration denied June 23, 2006.

---

[28] Contrary to the Martinellis' assertions, MOE adequately briefed the question of whether the trial court's award of attorney fees to the Martinellis should be reversed. However, MOE did not request attorney fees and expenses on appeal.

[29] We agree, however, that MOE never had a meaningful opportunity to contest the arbitrator's reasonableness finding.