[Nos. 56144-8-I; 57679-8-I.   Division One.   April 2, 2007.]

VILLAS AT HARBOUR POINTE OWNERS ASSOCIATION, *Respondent*, v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant*.

---

*James M. Beecher* and *Brent W. Beecher* (of *Hackett Beecher & Hart*), for appellant.

*Daniel Zimberoff* and *Dina Wong* (of *Barker Martin, PS*), for respondent.

¶1 SCHINDLER, J. — A condominium homeowners association sued the developer for breach of contract and construction defect damages. The developer sued the general contractor and the general contractor, in turn, sued the subcontractors. At mediation, the homeowners association settled with all parties except the siding subcontractor for approximately $5.7 million. Without the consent of its insurer, the siding subcontractor later entered into a settlement agreement with the homeowners association. In exchange for a stipulated judgment of $3.3 million and assignment of its coverage and bad faith claims against the insurer, the homeowners association agreed to not execute on the judgment and to dismiss the claims against the siding subcontractor. At the request of the homeowners association, the court conducted a hearing to determine whether the settlement was reasonable. After ruling that the settlement was reasonable, the court entered the stipulated judgment against the siding subcontractor. On appeal, the siding subcontractor's insurer contends the trial court did not have the authority to conduct a reasonableness hearing. In the alternative, the insurer challenges the court's reasonableness determination. Because the court had the authority to conduct a reasonableness hearing and did not abuse its discretion in determining that the settlement agreement was reasonable, we affirm.

## FACTS

¶2 The Villas at Harbour Pointe is a 96-unit condominium development located in Mukilteo. Possession View,

LLC (PVLLC), was the developer of the project and Construction Associates, Inc. (CAI), was the general contractor. Construction on the condominium project began in March 1998. The first phase was completed by mid-1999 and the second phase by early 2000.

¶3 T&G Construction, Inc. (T&G), was the siding subcontractor for the project. T&G's contract required it to indemnify CAI and obtain a general liability and commercial excess liability policy naming CAI as an additional insured. As agreed, T&G obtained a policy from Mutual of Enumclaw (MOE).[1]

¶4 Soon after construction was complete, homeowners began reporting water intrusion around the windows and the sliding glass doors. CAI concluded the water leaks were caused by defective siding installation and notified T&G. In early 2001, T&G returned to perform repairs. But after T&G's repairs, homeowners continued to report problems with water intrusion. The association hired an independent construction expert to investigate the water intrusion. The expert's report identified a number of construction and design defects, including improper installation of water resistive barriers and window flashing.

¶5 On June 11, 2002, the association sued the condominium developer, PVLLC, for $7.3 million in damages, alleging breach of contract and construction and design defects in violation of the Washington Condominium Act (WCA)[2] and the Consumer Protection Act.[3] PVLLC sued the general contractor, CAI. CAI sued the subcontractors for breach of contract, breach of warranty, and indemnification.[4] MOE defended T&G, subject to a reservation of its right to deny coverage.

---

[1] The policy was in effect from October 26, 1997 to October 26, 2000.

[2] Ch. 64.34 RCW.

[3] Ch. 19.86 RCW.

[4] T&G filed a fifth-party claim against its subcontractors.

¶6 The parties retained a number of experts to investigate the alleged damage. The experts agreed T&G's defective siding work resulted in water intrusion damage. The experts' estimated cost to repair the damage ranged from approximately $336,000 to $4.6 million.

¶7 During discovery, MOE learned that T&G was administratively dissolved on October 23, 2000. T&G then filed a motion for summary judgment, arguing that the statutory two-year time limitation to file a claim against a dissolved corporation barred CAI's claims against it.[5] In October 2004, the trial court denied T&G's motion for summary judgment. The trial court ruled that as a matter of law, the two-year time limitation did not apply to CAI's post-dissolution claims and there were material issues of fact concerning the predissolution claims.[6]

¶8 The association filed a motion for summary judgment, claiming that the alleged construction and design work violated the Uniform Building Code (UBC) and the WCA. The court ruled that a number of the alleged defects violated the UBC and the WCA. As to T&G's work, the court ruled that the improperly installed weather barriers and flashing violated the UBC and the WCA.

¶9 At mediation, the association settled with all parties except T&G for approximately $5.7 million.[7] Without MOE's consent, T&G then entered into a settlement agreement with the association in November 2004. In exchange for a stipulated judgment of $3.3 million and assignment of its coverage and bad faith claims, the association agreed to not execute on the judgment and dismiss the lawsuit against T&G.[8]

---

[5] In the alternative, T&G argued CAI's contract claims were barred by the three-year statute of limitations.

[6] The court also ruled that as a matter of law, the six-year statute of limitations applied.

[7] The association also did not settle with the framing contractor, Burley Bear Homes, Inc.

[8] On September 22, 2004, MOE filed a declaratory judgment action on coverage and its obligation to indemnify T&G under the policy.

¶10 The association and T&G notified MOE that a reasonableness hearing on the settlement agreement was scheduled for December 2. MOE filed a motion to intervene for the "purpose of challenging the reasonableness of the settlement between Plaintiff and T&G Construction, Inc." The court granted MOE's request to intervene and continued the hearing to allow MOE to conduct additional discovery.

¶11 The day before the hearing, MOE objected to the court's authority to conduct a reasonableness hearing in a breach of contract condominium construction defect case. Over MOE's objection, the court proceeded with the hearing. A number of witnesses testified on behalf of the association, T&G, and MOE. The court also reviewed extensive documentary evidence, including the experts' scope and estimated cost of repair and a number of photographs depicting the damage.

¶12 In a memorandum decision issued on March 8, 2005, the court ruled that it had the authority to conduct a reasonableness hearing and the $3.3 million settlement between the Association and T&G was reasonable. On March 17, the court entered the $3.3 million stipulated judgment against T&G.

¶13 On April 12, MOE filed a motion asking the court to withdraw or correct its memorandum decision. Based on a recent decision of this court, MOE argued that the claims against T&G were barred by the two-year time limitation to file a claim against a dissolved corporation.[9] The court denied MOE's motion and entered findings and conclusions on its determination that the settlement agreement was reasonable.[10]

---

[9] *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 126 Wn. App. 285, 108 P.3d 818 (2005), *aff'd on other grounds*, 158 Wn.2d 603, 146 P.3d 914 (2006).

[10] Although the court denied MOE's motion to withdraw or correct the memorandum decision, the court concluded $3 million, instead of $3.3 million, was reasonable "based on risks Construction Associates/Association would have incurred at trial." The parties do not challenge the court's $3 million determination.

## ANALYSIS

*Authority To Conduct Reasonableness Hearing*

¶14 MOE contends that under RCW 4.22.060, the trial court had no authority to conduct a reasonableness hearing in a breach of contract condominium construction defect case.

■■ ¶15 We review questions of law de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *Stuckey v. Dep't of Labor & Indus.,* 129 Wn.2d 289, 295, 916 P.2d 399 (1996). Whether a statute applies is also a question of law. *Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 887, 658 P.2d 1267 (1983).

■■ ¶16 As part of the 1981 tort reform act, Laws of 1981, ch. 27 (codified in chapters 7.72 and 4.22 RCW), RCW 4.22.060 creates a right of contribution between joint tortfeasors and procedures to enforce that right. *Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *overruled on other grounds by Crown Controls, Inc. v. Smiley,* 110 Wn.2d 695, 756 P.2d 717 (1988). Under RCW 4.22.060(1), the court's determination that a settlement amount is reasonable establishes the offset for a nonsettling joint tortfeasor. RCW 4.22.060(2) requires the court to determine whether the settlement amount is reasonable and, if not, to set forth the amount that is reasonable.[11]

■ ¶17 In *Glover,* the Washington Supreme Court adopted a number of factors the court should consider in determining the reasonableness of a settlement under RCW 4.22.060. But according to the court, no one factor controls

---

[11] RCW 4.22.060(2) provides:

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

and the trial court retains the discretion to make an objective determination of the reasonableness of the settlement based on the facts and circumstances of each case. *Glover*, 98 Wn.2d at 718.

¶18 When an insurer refuses to settle a claim, the insured, without the consent of the insurer, can negotiate a settlement with the claimant. *Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, Inc.*, 128 Wn. App. 317, 322, 116 P.3d 404 (2005). The insurer may be liable for the settlement amount to the extent reasonable. *Red Oaks*, 128 Wn. App. at 322. An insured's assignment of its bad faith claims also allows the claimant to seek more than the policy limits. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 49 P.3d 887 (2002).

¶19 In *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339 (1991), this court adopted the *Glover* factors to evaluate the reasonableness of a settlement between an insured and the claimant for a stipulated judgment and an assignment of coverage and bad faith rights in exchange for a covenant not to execute and dismissal. Because of similar concerns regarding the impact of a settlement on other parties and the risk of fraud or collusion, we concluded the *Glover* factors should apply to a covenant judgment settlement agreement between an insured and the claimant. *Chaussee*, 60 Wn. App. at 512.

¶20 In *Besel*, the Washington Supreme Court approved of the procedure adopted in *Chaussee* and of conducting a reasonableness determination in the underlying action prior to a coverage or a bad faith action. The court also held that the settlement amount the court determines is reasonable establishes the presumptive measure of harm in a later bad faith action against the insurer. *Besel*, 146 Wn.2d at 738. According to the court, a reasonableness determination under the *Chaussee* criteria protects "insurers from excessive judgments especially where . . . the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." *Besel*, 146 Wn.2d at 739.

¶21 In *Red Oaks*, a recent breach of contract condominium defect case, this court reiterated the importance of the trial court's reasonableness determination when the insured enters into a stipulated judgment and assigns its coverage and bad faith claims in exchange for a covenant not to execute on the judgment. *Red Oaks*, 128 Wn. App. at 321-22. In *Red Oaks*, after the trial court denied the insurer's motion to continue the reasonableness hearing, the insurer decided not to participate in the hearing. On appeal, we held that the trial court's denial of the motion to continue did not violate due process and the insurer was not subject to greater bad faith liability by participating in the reasonableness hearing. *Red Oaks*, 128 Wn. App. at 324.

¶22 As in *Chaussee, Besel,* and *Red Oaks*, the association's settlement agreement with T&G included a stipulated judgment in favor of the association with a covenant not to execute and an assignment of T&G's coverage and bad faith claims against MOE. Based on *Chaussee, Besel,* and *Red Oaks*, we conclude the trial court has the authority in a contract condominium defect case to conduct a reasonableness hearing on a covenant judgment settlement agreement between an insured and the claimant.

¶23 MOE also argues the trial court did not have jurisdiction to conduct a reasonableness hearing because the association and T&G entered into the settlement agreement prior to the hearing. Specifically, MOE argues the court did not have jurisdiction because there was no case in controversy and T&G did not comply with the requirements of RCW 4.22.060(1).

¶24 For a court to exercise judicial power, there must be a justiciable case or controversy. U.S. CONST. art. III, § 2; *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (before the jurisdiction of a court may be invoked, the virtually universal rule is that there must be a justiciable controversy).[12] Because the stipulated judgment establishes the presumptive measure of harm in a later bad

---

[12] The association contends MOE waived the right to argue jurisdiction based on its participation in the reasonableness hearing. But the right to challenge

faith action against the insurer if the court determines the settlement is reasonable, there was a justiciable controversy. *Besel*, 146 Wn.2d at 738. And in *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 89 P.3d 265 (2004), *review denied*, 153 Wn.2d 1009 (2005), this court rejected the argument that the reasonableness hearing must be held in the subsequent bad faith action. *Howard*, 121 Wn. App. at 379.[13]

¶25 Relying on the requirements of RCW 4.22.060(1), MOE also argues that the court did not have jurisdiction because MOE did not receive notice before T&G and the association entered into the settlement agreement. RCW 4.22.060(1) provides that:

> A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court.

¶26 Under the plain terms of the statute, the claimant must provide five days notice of the intent to settle to all other parties. But here, there is no dispute that MOE was not a party and, therefore, was not entitled to notice under RCW 4.22.060(1). Nevertheless, even assuming MOE was entitled to notice as a party, MOE cannot establish a due process violation or prejudice. There is no dispute that MOE received notice of the settlement agreement before the reasonableness hearing or that MOE intervened and participated in the hearing. *Red Oaks*, 128 Wn. App. at 324.

jurisdiction cannot be waived and may be raised at any time. *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998).

[13] The cases MOE relies on to argue that the court did not have jurisdiction are either inapposite or distinguishable. In *National School Studios, Inc. v. Superior School Photo Service, Inc.*, 40 Wn.2d 263, 242 P.2d 756 (1952), the court declined to accept review because the time limitation in a covenant not to compete had expired. In *Rosling v. Seattle Building & Construction Trades Council*, 62 Wn.2d 905, 907, 385 P.2d 29 (1963), the court declined to review a case concerning picketing at a construction site because construction was complete, making the question "purely academic." In *Tosco Corp. v. Hodel*, 804 F.2d 590 (10th Cir. 1986), while the appeal was pending, the parties settled. When third parties moved to intervene, the court ruled that it lacked jurisdiction because there was no case or controversy.

We conclude the trial court had jurisdiction to conduct a reasonableness hearing on the settlement agreement between the insured and the claimant in this condominium construction defect case.

¶27 The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See*, RCW 2.06.040; CAR 14.

APPELWICK, C.J., and Cox, J., concur.

Reconsideration granted and opinion modified May 3, 2007.