[No. 60394-9-I.   Division One.   July 7, 2008.]

THE HEIGHTS AT ISSAQUAH RIDGE OWNERS ASSOCIATION, *Respondent*, v. DERUS WAKEFIELD I, LLC, *Defendant*, STEADFAST INSURANCE COMPANY, *Appellant*.

---

*Jacquelyn A. Beatty* and *Walter E. Barton*, for appellant.

*Anthony L. Rafel* and *Robert A. Hyde* (of *Rafel Law Group, PLLC*), for respondent.

¶1 APPELWICK, J. — A condominium owners' association settled construction defect litigation with the declarant and the general contractor. The association took assignment of the declarant's bad faith claim against its insurer. The insurer intervened at a reasonableness hearing on the settlement and appeals the finding of reasonableness. A reasonableness hearing in a contract action is not subject to the same factors as a reasonableness hearing in a tort action. The insurer did not establish bad faith, collusion, or fraud. We affirm.

*Facts*

¶2 The Heights at Issaquah Ridge is a residential condominium complex. The homeowners association (HOA) filed a construction defect lawsuit against Derus Wakefield I, LLC. Derus was the declarant for the Heights under RCW 64.34.020(13) and the recorded condominium declaration. In May 2005, the HOA asserted significant claims against Derus for violations of the Washington Condominium Act, chapter 64.34 RCW. Derus filed a third-party complaint against Sacotte Construction, Inc., the general contractor for the Heights. The contract between Derus and Sacotte required Sacotte to indemnify Derus for damages relating to construction defect claims.

¶3 The HOA moved for partial summary judgment on the issue of breach. The trial court granted the motion, finding that 35 specific construction defects constituted breaches by Derus. The issue of damages was reserved for trial.

¶4 During construction of the Heights, Derus had two commercial general liability policies issued by Steadfast Insurance. The policies insured Derus Development Company. During the litigation, Steadfast admitted that Derus had coverage under one of the policies but disputed the other.

¶5 The HOA, Derus, and Sacotte engaged in protracted negotiations and eventually arrived at a settlement agreement. Under the terms of the agreement, the parties compromised on the scope and cost of repair from the initial estimate of $9,566,367 to $7,894,993—a reduction of approximately 17.5 percent from the amount the HOA planned to present at the damages trial. In addition, the parties agreed to $300,000 in attorney fees and $150,000 in costs. All together, the stipulated judgment amounted to $8,344,993. Derus agreed to pay the HOA $3,025,000 in cash, which included $75,000 from Derus, $1,950,000 from its primary umbrella insurer Ohio Casualty Insurance

Company, and $1,000,000 from Steadfast. In exchange for the remaining settlement sum, Derus assigned its rights to the claims against both Sacotte and Steadfast. The HOA agreed to a covenant not to execute on the balance of the stipulated judgment against Derus, except in pursuit of the assigned claims.

¶6 The settlement agreement also included similar provisions with Sacotte. As assignee of Derus, the HOA agreed to settle the dispute with Sacotte for the same sum of $8,344,993. Sacotte agreed to pay $1,334,807 in cash, including $1,284,307 from Steadfast, its insurer. Sacotte also agreed to assign several claims against subcontractors and their insurers to the HOA, as assignee of Derus.

¶7 During the litigation—including the settlement negotiations—Derus provided Steadfast with extensive information about the case. Derus invited Steadfast to the mediation sessions and provided detailed memoranda concerning the parties' positions and liability. Steadfast did not attend the mediation but made an offer to the HOA under the uncontested insurance policy. Eventually, Steadfast agreed to pay $1 million under that policy.

¶8 The HOA and Derus filed a motion to determine the reasonableness of their settlement. Steadfast moved for, and was granted, leave to intervene. Steadfast argued that the agreement was not reasonable. The court disagreed and found the settlement reasonable. Judgment was entered against Derus. Then, the HOA (as assignee of Derus) and Sacotte brought a motion to determine the reasonableness of their settlement. The court also approved this motion and entered judgment against Sacotte. After completion of these hearings, the HOA filed suit against Steadfast for coverage and bad faith, seeking damages of $8,344,993, before setoff for amounts paid on behalf of Derus. Steadfast now appeals only the determination of reasonableness of the HOA-Derus settlement.

*Discussion*

¶9 Under RCW 4.22.060, the trial court holds a hearing to determine the reasonableness of a settlement agreement among joint tortfeasors. *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 711, 658 P.2d 1230 (1983). The Supreme Court defined numerous factors the trial court should consider in order to determine reasonableness.

[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Id.* at 717 (alteration in original). No single factor controls, and the court has the discretion to weigh each case individually. *Id.*

¶10 This court later adopted the application of these factors to determine the reasonableness of consent judgments with covenants not to execute and bad faith claims. *See Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510-11, 803 P.2d 1339 (1991); *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002). When an insurer refuses to settle, the insured can settle and then sue the insurer for bad faith. In this situation, an insurer, who refuses in bad faith to settle the claim, is liable for the settlement to the extent that it is reasonable and in good faith. *Besel*, 146 Wn.2d at 736. "The presumptive measure of the insured's damages in a bad faith action is the settlement amount, so long as the amount is reasonable and not the product of fraud or collusion." *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 375, 89 P.3d 265 (2004). In *Chaussee*, the court recognized that the *Glover* factors logically apply in the evaluation of a settlement in the context of a failure to settle claims, due to concerns that an insured could settle for an inflated amount to escape

exposure. *Chaussee*, 60 Wn. App. at 510-12. "Because a covenant not to execute raises the specter of collusive or fraudulent settlements, the limitation on an insurer's liability for settlement amounts is all the more important. A carrier is liable only for reasonable settlements that are paid in good faith." *Besel*, 146 Wn.2d at 738. Application of the *Glover/Chaussee* factors protects insurers from excessive judgments. *Id.* at 739. Evaluating settlement through these criteria promotes reasonable settlements and discourages fraud and collusion. *Id.* at 738.

■ ■ ¶11 This court recently concluded that a "trial court has the authority in a contract condominium defect case to conduct a reasonableness hearing on a covenant judgment settlement agreement between an insured and the claimant." *Villas at Harbour Pointe Owners Ass'n v. Mut. of Enumclaw Ins. Co.*, 137 Wn. App. 751, 760, 154 P.3d 950 (2007). Because construction defect settlements may become the presumptive measure of damages for a bad faith claim against an insurer, a reasonableness hearing is appropriate. But, the nature of construction defect cases requires a different approach to determining reasonableness. Construction defect cases, like the case at hand, implicate contractual liability, rather than tort liability. Here, the defendants involved are not joint tortfeasors. Instead, they face liability due to statutory warranty or contractual obligations. The cases that establish and extend the use of the reasonableness factors—*Glover*, Chaussee, and *Besel*—originate in tort law and construe the reasonableness requirement of RCW 4.22.060, which concerns tort settlement agreements. As a result, the *Glover* factors reflect the tort concept of comparative fault.

¶12 But, comparative fault has no role in construction defect cases that involve contractual obligations to indemnify. In these cases, protecting the insurer from excessive judgments that are the product of collusion or fraud between the claimant and insured is the main concern. *Besel*, 146 Wn.2d at 738-39. Therefore, in a contract action where the insurer is intervening to protect its interests in a

separate bad faith claim, the insurer's interest relates only to the existence of bad faith, collusion, and fraud in the settlement agreement. The remaining *Glover* factors, otherwise applicable in a tort case, are relevant here only to the extent they inform the questions of bad faith, collusion, and fraud.[1]

¶13 Steadfast claims that the trial court abused its discretion by finding the settlement reasonable. According to Steadfast, the trial court failed to consider two of the *Glover* factors—the relative fault of the settling parties and the interests of a party not released by the settlement.

¶14 Steadfast contends that Derus and Sacotte had equal culpability, yet both agreed to fully settle the claims. The implication is that the HOA has negotiated a double recovery from Derus and Sacotte, instead of apportioning damages. But, as noted above, the liability in this case stems from statutory warranty and contractually incurred indemnity, not tort. Derus and Sacotte are not equal tortfeasors. Derus, as declarant, was solely liable to the HOA for breaches of the Condominium Act. The settlement agreement with Derus reflects the damages stemming from this liability. The HOA had no claim against Sacotte. Derus, alone, had a claim against Sacotte for indemnification based on their contract. The HOA settled with Sacotte as Derus' assignee. The settlement between the HOA and Sacotte represents Sacotte's indemnification of Derus for the construction defect liability. That the settlement amount for Derus and Sacotte is the same is no coincidence—Sacotte was contractually required to indemnify Derus for the full amount of the damages. The equal financial arrangements result from the indemnity, not

---

[1] *Werlinger v. Warner* appears to require the court to take insurers' interests into account. 126 Wn. App. 342, 351, 109 P.3d 22 (2005). "And the interest of the insurer, as a third party affected by the settlement, was another *Glover* factor weighing against a determination that the amount was reasonable." *Id.* We note that insurers are third parties, not "other parties," for the purposes of the *Glover* factors. *Werlinger* does not claim to change the *Glover* factors. We take this quotation merely to recognize that bad faith, collusion, or fraud, which are *Glover* factors, may affect the interests of an insurer whether or not it is a party to the action.

equal liability among joint tortfeasors. The settlement agreement accurately represents the liability of the parties, not double recovery from joint tortfeasors. Relative fault is not a factor here.

¶15 Steadfast also contends that the trial court abused its discretion by failing to consider Steadfast's interests as a party not being released by the settlement agreement. Because the "sole purpose of the covenant judgment [is] to serve as the presumptive measure of damages in a separate bad faith lawsuit," Steadfast has a significant interest in the settlement agreement. *Werlinger v. Warner*, 126 Wn. App. 342, 350-51, 109 P.3d 22 (2005).

¶16 The trial court believed that Steadfast's interests had been considered. "I do believe, as I stated, that Steadfast's interests were considered, at least I allowed more time to have them considered, and there is evidence in the record of that." Derus apprised Steadfast of the mediation, and Steadfast was allowed to intervene and participate in the reasonableness hearing. Steadfast offers no evidence that its presentation of its interests was limited by the court. As a nonparty, the only interest of Steadfast to be considered was that of bad faith, collusion, or fraud by the settling parties.

¶17 The settlement agreement shows no signs of collusion or fraud. The experts agree that the settlement reflects a true compromise given the defects and scope of repairs. The compromise reached by the parties negates Steadfast's concerns about a lack of incentive to minimize the settlement amount. As stated above, the settlement represented a 17.5 percent decrease from the amount the HOA intended to present to a jury. The compromise reached by the parties impressed the judge, who had witnessed the fierce debate about many of the structural defects during the motion for partial summary judgment. "The fact that those were issues that were ultimately dropped by The Heights is significant and shows that there was a real compromise in the scope." No evidence shows that Derus failed to vigorously negotiate the settlement. Further, Steadfast provides

no evidence of bad faith, collusion, or fraud. The protracted negotiations and compromise demonstrate that the parties did not collude in order to defraud Steadfast. The trial court did not abuse its discretion by finding the settlement reasonable.

¶18 The HOA requests fees on appeal under the Condominium Act, which contains a provision for attorney fees and costs.

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.

RCW 64.34.455. According to the HOA, Steadfast has effectively replaced the declarant, Derus, in the appeal. But, the declarant supported the settlement, so Steadfast intervened to protect its own interests, not those of the declarant. As a result, Steadfast does not replace Derus for the purposes of the Condominium Act fees provision.

¶19 As an alternative ground for fees, the HOA claims that this appeal is intertwined with insurance coverage issues, so *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991), provides for fees. "An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue." *Id.* But, the question in this appeal is not related to insurance coverage. While the HOA has filed a claim against Steadfast relating to coverage under another contract for insurance, this appeal does not concern an insured (or assignee) suing to obtain the benefit of an insurance contract. The case merely concerns the reasonableness of the settlement agreement in

the construction defect case. *Olympic Steamship* does not provide for recovery in this scenario.

¶20 We affirm but award no fees on appeal.

ELLINGTON and LEACH, JJ., concur.

Review denied at 165 Wn.2d 1029 (2009).