# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CFD FUNDING I, LLC, a Washington limited liability company, on its own behalf and on behalf of PARKRIDGE PROPERTY, LLC, a Washington limited liability company,<br><br>          Plaintiffs,<br><br>          v.<br><br>STANLEY XU and NANLING CHEN, husband and wife and the marital community comprised thereof,<br><br>          Appellants/Cross-Respondents<br><br>LONGWELL PARKRIDGE, LLC, a Washington limited liability company; BRITTANY PARK APARTMENTS, L.L.C., a Washington limited liability company; and STERLING SAVINGS BANK, a Washington banking corporation,<br><br>          Defendants,<br><br>JUDGMENT SERVICES, LLC, as assignee of STERLING SAVINGS BANK,<br><br>          Respondent/Cross-Appellant. | No. 83604-8-I<br>(consolidated with No. 83900-4-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

Citations and pin cites are based on the Westlaw online version of the cited material.

STERLING SAVINGS BANK,

          Plaintiff,

      v.

STANLEY XU and NANLING CHEN, husband and wife and the marital community comprised thereof,

          Appellants/Cross-Respondents,

LONGWELL PARKRIDGE, LLC, a Washington limited liability company; and PARKRIDGE PROPERTY, LLC, a Washington limited liability company,

          Defendants,

JUDGMENT SERVICES, LLC, as assignee of STERLING SAVINGS BANK,

          Respondent/Cross-Appellant

ANDRUS, J.P.T. — Judgment Services, LLC, as judgment assignee of Sterling Savings Bank, appeals a superior court order discharging judgment debtors Stanley Xu and Nanling Chen (collectively Xu) from a 2014 summary judgment order finding them liable for $676,217.42 based on their fraud and breach of a personal guaranty. Xu cross appeals an order permitting Judgment Services to amend the summary judgment order to add a judgment summary as required under RCW 4.64.030. We reverse the order discharging Xu from liability on the underlying debt and affirm the court's order permitting Judgment Services to add

a judgment summary. Because Xu is no longer the prevailing party, we also reverse the order awarding Xu attorney fees.

FACTS

CFD-Parkridge, LLC, owned by Charles Diesing, owned a 249-unit apartment complex in Everett, Washington. Xu approached Diesing about purchasing the property and the parties agreed on a purchase price. To finance the purchase, Xu arranged for a $14.95 million loan from GE Capital and Diesing agreed to provide $6 million in financing. Xu and Diesing agreed to form Parkridge Property LLC and that, in exchange for Diesing's $6 million capital contribution, Diesing would receive a 75 percent interest in Parkridge. Xu and Diesing also agreed that Diesing would receive a specified return on his investment and that, after three years, Parkridge would redeem Diesing's membership interest.

Diesing formed CFD Funding 1, LLC (CFD) to hold his interest in Parkridge. Xu formed Longwell Parkridge LLC (Longwell) to hold his interest in the property. Parkridge's operating agreement required Xu to obtain CFD's written consent prior to borrowing money or granting any lien on the property. Despite this restriction, in 2011, Xu obtained an $18 million loan from Sterling Savings Bank on Parkridge's behalf without the knowledge or consent of Diesing or CFD. Xu provided Sterling with a forged operating agreement falsely identifying Xu as Parkridge's only member. Sterling funded the $18 million loan, using $15 million of the loan proceeds to pay off the GE loan and depositing the remaining loan proceeds of $2.76 million directly into Xu's personal bank account. Xu executed the loan documents and a deed of trust without CFD's knowledge or consent.

Xu personally guaranteed the loan. Under the continuing guaranty, Xu promised to pay all obligations of Parkridge under the note and deed of trust:

> Guarantor hereby unconditionally, absolutely, and irrevocably guarantees the punctual payment when due, whether at stated maturity, by acceleration or otherwise of all obligations of the Borrower now or hereafter existing under the Loan Documents, whether for principal, interest, fees, expenses or otherwise.

Xu also guaranteed payment of "all fees and other collection costs . . . reasonably incurred by Lender" in any legal proceeding. Xu also agreed to waive

> (a) any defense based upon any legal disability or other defense of Borrower, any other guarantor or other person, or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment of all sums payable under the Note or any of the other Loan Documents;

> (b) any defense based upon any lack of authority of the officers, directors, members, partners or agents acting or purporting to act on behalf of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower.

Xu further agreed that his obligation to pay was "independent of the obligations of the Borrower under the Note, Deed of Trust and the other Loan Documents." The guaranty concluded with the following provision, in capital letters:

> GUARANTOR UNDERSTANDS AND AGREES THAT (1) THE OBLIGATIONS UNDER THIS AGREEMENT ARE SEPARATE AND INDEPENDENT FROM BORROWER, ANY OTHER GUARANTOR, OR ANY OTHER PERSON, AND REPRESENT AN UNCONDITIONAL, ABSOLUTE, AND IRREVOCABLE OBLIGATION ON THE PART OF GUARANTOR TO PAY THE FULL AMOUNT OF THE INDEBTEDNESS WHEN DUE, (2) LENDER DOES NOT HAVE TO PURSUE THE BORROWER, ANY OTHER GUARANTOR, OR ANY OTHER PERSON, OR FORECLOSE OR REALIZE ON ALL OR ANY PORTION OF THE COLLATERAL, OR PURSUE ANY OTHER REMEDIES BEFORE DEMANDING FULL PAYMENT FROM GUARANTOR, AND (3) GUARANTOR SHALL REMAIN FULLY LIABLE UNDER THIS AGREEMENT *EVEN IF* THE COLLATERAL IS IMPAIRED OR DISCHARGED OR *THE BORROWER, ANY OTHER GUARANTOR, OR ANY OTHER*

*PERSON IS DISCHARGED OR OTHERWISE RELIEVED OF LIABILITY UNDER THE LOAN DOCUMENTS.*

(Emphasis added.)

When CFD discovered the loan, it filed a lawsuit as a derivative action on Parkridge's behalf against Xu, alleging breach of contract, breach of fiduciary duty, conversion, restitution, and breach of a personal guaranty (the Parkridge Lawsuit). Among other things, CFD asserted that Xu did not have the authority to cause Parkridge to borrow the $18 million from Sterling. In the same lawsuit, CFD brought a quiet title action against Sterling on behalf of Parkridge to invalidate the deed of trust and eliminate Sterling's claim against the property for any amount in excess of the sum Sterling paid to satisfy the GE loan. CFD also sought the appointment of a receiver to take over management of Parkridge's business.

In August 2011, the court granted CFD's motion to appoint a receiver. In December 2011, the court granted CFD's motion for summary judgment on liability against Xu and Longwell and these two parties subsequently settled their dispute. Xu and Longwell agreed to pay CFD $11.1 million to redeem CFD's interest in Parkridge.[1] No part of this settlement amount related to Parkridge's claim against Sterling or Sterling's claims against Parkridge or Xu.

In June 2012, the receiver, then in charge of managing Parkridge's assets, arranged to sell the property. CFD and Sterling agreed that it was in the parties' best interests to sell the property, but disputed which entity had priority over the proceeds of this sale. These parties agreed that the first $15 million in sales

---

[1] In November 2012, CFD obtained a confession of judgment against Xu in the amount of $5.2 million. CFD filed a satisfaction of judgment on March 9, 2017.

proceeds should be paid to Sterling under the doctrine of equitable subrogation to reimburse the bank for paying off the loan to Parkridge's prior lender, GE. These parties further agreed that the remaining sale proceeds—approximately $2.7 million—would also be distributed to Sterling, but without prejudice to the parties' right to assert claims and defenses as to which party had priority to the proceeds in excess of the GE loan payoff amount. Both CFD and Sterling continued to claim priority to the remaining sale proceeds of $2.7 million.

In October 2013, Xu and Longwell consented to CFD being appointed under RCW 25.15.295 as the sole entity authorized to wind up Parkridge's affairs. CFD authorized Parkridge to pursue claims against Sterling in its own name. The court then dismissed CFD as the named plaintiff and permitted Parkridge to bring the lawsuit in its own name. Parkridge asserted a claim for damages against Sterling in the amount of "at least $3 million."

In January 2014, Sterling filed cross-claims against Xu for fraud and negligent misrepresentation and a counterclaim against Parkridge for breach of contract. It also sought to recover under the personal guaranty that Xu had signed. Sterling alleged that both Parkridge and Xu were separately liable for the outstanding loan deficiency amount, plus interest, costs, and attorney fees.

A month later, Sterling sought summary judgment against Xu for breach of the guaranty and fraud. It contended that the $17.7 million in sale proceeds was insufficient to repay its loan in full and that it was entitled to judgment for the loan deficiency amount against Xu. Sterling presented evidence that, after the sale of the apartment building for $17.7 million, there remained outstanding loan balance

- 6 -

of $676,217.42, representing principal and interest of $595,428[2]—the remaining amount owed under the loan—and another $80,789.40 for attorney fees and costs.

On April 4, 2014, the trial court granted Sterling's motion and entered an order for summary judgment against Xu for $676,217.42. The court found that Xu had made material and false representations to Sterling, inducing it to loan $18 million to Parkridge. It further found that Xu had executed a continuing guaranty, promising to pay Sterling all amounts owing under the Parkridge loan. It ruled:

> ORDERED, ADJUDGED AND DECREED, that Sterling Bank's Motion for Summary Judgment against Stanley Xu and Nanling Chen for breach of guaranty and fraud is GRANTED and Sterling Bank is granted judgment against Stanley Xu and Nanling Chen, jointly and severally, in the amount of $676,217.42, plus attorney fees if supported per lodestar.

On April 16, 2014, after the court entered this order, but before trial on the remaining claims and counterclaims between Parkridge and Sterling, these two parties submitted a "stipulated judgment" for the court's approval. Under this stipulation, Parkridge and Sterling agreed to entry of judgment on Sterling's counterclaim against Parkridge if certain events came to pass at trial. First, they agreed that if Parkridge prevailed on its claim against Sterling, "the Court should also dismiss Sterling's counterclaim against Parkridge and Parkridge releases Sterling from any further liability beyond its present title coverage." Second, they agreed that if Parkridge did not prevail against Sterling and the court did not enter judgment for Parkridge on its claim, "the Court should enter judgment in Sterling's favor on its counterclaim against Parkridge" in the amount of $595,428.02, with

---

[2] The deficiency sought on summary judgment included the principal balance of $285,979.16, plus late fees and a prepayment penalty of $176,523.87.

costs and fees of $132,116.90. The stipulation, however, was not binding on Sterling "unless findings [] or a verdict, and a judgment are entered after conclusion of a trial." This stipulation did not reference Sterling's pre-existing summary judgment against Xu for the loan deficiency amount.

On June 6, 2014, after a six-day bench trial, at which Xu appeared through counsel, the trial court entered findings of fact and conclusions of law in favor of Parkridge. First, the court held that because Sterling paid GE Capital $15 million, it was entitled to an equitable lien on the property equal to that amount. But it found Sterling failed to make reasonable inquiry into Parkridge's ownership structure and Xu's authority to enter into the loan before funding the loan and that Sterling was not a "bona fide encumbrancer." As a result of this finding, the court invalidated Sterling's deed of trust.

Second, it concluded that Parkridge was entitled to recover its damages, valued as the disputed $2.7 million in proceeds from the receiver sale.[3] On July 31, 2014, the court entered judgment in Parkridge's favor for $2.7 million, plus attorney fees, costs, and prejudgment interest, totaling $3.7 million.

Sterling took no steps to have the April 4, 2014 summary judgment order against Xu entered as a final judgment with a judgment summary, as is required by RCW 4.64.030.

---

[3] Sterling appealed this judgment, but argued only that the trial court erred in denying Sterling's request for a $1 million offset for settlement proceeds Parkridge received as a result of a malpractice claim against the attorney who drafted an opinion letter to Sterling on behalf of Parkridge. This court affirmed the trial court's ruling that Sterling was not entitled to this offset. *Sterling Sav. Bank v. Xu*, No. 72149-6-I slip op. at 11-12 (Wash. Ct. App. Sept. 28, 2015) (unpublished) https://www.courts.wa.gov/opinions/pdf/721496.pdf.

On July 19, 2016, Parkridge filed a full satisfaction of judgment in Sterling's favor, indicating that Sterling had paid in full the judgment in the Parkridge Lawsuit on May 13, 2016.

At the same time, Chicago Title Insurance Company initiated a lawsuit against Xu to recover the $4.6 million in proceeds it had paid to Parkridge on Sterling's behalf, alleging the same claims that Sterling had asserted in its earlier crossclaims (Chicago Title Lawsuit). It alleged that the judgment Sterling had obtained against Xu in the Parkridge Lawsuit was "interlocutory and not final." Xu moved to dismiss the Chicago Title Lawsuit, arguing that, because the April 4, 2014 summary judgment order against Xu for the loan deficiency amount was a final judgment on the merits as to the dispute between Sterling and Xu, and Chicago Title had a concurrence of identity to Sterling, Chicago Title was barred from bringing new claims against Xu.

On August 15, 2016, the trial court agreed with Xu and dismissed Chicago Title's complaint. The court specifically ruled that Sterling's April 4, 2014 summary judgment against Xu became final after the trial court entered a final judgment against Sterling in July 2014.

Sterling made no other effort to collect on its April 4, 2014 summary judgment against Xu. Instead, on November 9, 2020, Sterling assigned its rights under the judgment to GSUHC Recovery Fund, LLC. A year later, on November 10, 2021, GSUHC Recovery Fund, LLC assigned the judgment to Judgment Services, LLC.

On November 16, 2021, Judgment Services filed a motion in the Parkridge Lawsuit, asking the court to reduce Sterling's April 4, 2014 summary judgment against Xu "to a monetary judgment with a judgment summary" pursuant to RCW 4.64.030(2)(a). Judgment Services also requested that post-judgment interest be included in the judgment summary. A court commissioner granted Judgment Services' motion on December 1, 2021, and awarded Judgment Services post-judgment interest in the amount of $617,217.42.

Xu filed a motion to revise the commissioner's order, arguing that the motion was untimely under CR 54(e) and that any order imposing post-judgment interest constituted an impermissible judicial amendment to an order and was time-barred under CR 60(b)(1). On January 5, 2022, the trial court granted Xu's motion in part, vacating the award of post-judgment interest and ruling that it would determine the applicable interest rate "upon a separate motion and hearing." It otherwise affirmed the validity of the April 4, 2014 summary judgment and entered a "Revised Judgment with Judgment Summary" for the original principal amount of $676,217.42.

On January 18, 2022, Xu appealed the Revised Judgment and Judgment Summary to this court. The next month, Xu filed a motion under CR 60(b) to have the April 4, 2014 summary judgment deemed fully satisfied and discharged based on the April 14, 2014 stipulated judgment that Parkridge and Sterling had agreed to in advance of their June 2014 trial.

On February 25, 2022, the trial court granted Xu's motion to discharge Sterling's judgment against Xu based on what it described as "largely undisputed"

facts. Relevant to this appeal, the trial court concluded that the April 14, 2014 stipulated judgment between Parkridge and Sterling constituted a release of Sterling's counterclaim against Parkridge, that Sterling "received at the least the value of the Loan Deficiency Claim in its settlement with Parkridge," and that Xu was entitled to a credit for the full amount Xu owed in the summary judgment order. It further held that Xu was entitled to relief under CR 60(b)(11), "to avoid a double recovery." It determined that "any liability of Xu [for the] Summary Judgment Order was satisfied, released, and discharged."[4]

Xu subsequently filed a petition for attorney fees of $161,550.00, arguing that paragraph 10 of the guaranty entitled him to recover the fees he incurred in defending Judgment Services' motions. The trial court granted the motion without entering any findings of fact or conclusions of law as to the basis for concluding Xu was legally entitled to this award, or supporting the reasonableness of the amount awarded.

Judgment Services appeals the order discharging the April 4, 2014, summary judgment and the order granting Xu's fee petition. Xu also appeals the trial court's authorization to amend the judgment to include a judgment summary. This court consolidated the two appeals.

---

[4] The trial court further ruled that Judgment Services' motion for post-judgment interest was moot.

ANALYSIS

Discharge or Release of the April 4, 2014 Judgment

Judgment Services contends the trial court erred in concluding that the April 14, 2014 stipulated judgment between Parkridge and Sterling constitutes a discharge of Xu's liability under the April 4, 2014 summary judgment. We agree.

CR 60(b) allows the trial court to relieve a party from a final judgment where:

(6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; [or]

. . . .

(11) Any other reason justifying relief from the operation of the judgment.

We review a trial court's CR 60(b) ruling for abuse of discretion. *Winter v. Dep't of Soc. and Health Servs.*, 12 Wn. App. 2d 815, 829, 460 P.3d 667 (2020). A court abuses its discretion if its decision is based on unsupported facts, applies the wrong legal standard, or bases a ruling on an erroneous view of the law. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). When a trial court's CR 60(b) decision is based on findings of fact, we review those findings for substantial evidence. *Dalton v. State*, 130 Wn. App. 653, 664, 124 P.3d 305 (2005).

Judgment Services first argues that the trial court erred in finding that Sterling received value for a settlement with Parkridge sufficient to cover any loan deficiency. We agree the record does not support the trial court's finding.

It is undisputed that Xu guaranteed payment of the entire loan—including interest, fees, and attorney fees incurred in collection. At the time Sterling obtained its April 4, 2014 summary judgment against Xu, the total amount of the debt, plus accrued fees and penalties, exceeded the $17.7 million that Sterling recovered after the receiver sold the property. As Kristina Robbins, Lending Operations Executive with Sterling, testified,

> 3. Sterling Bank has sustained a loss on the loan. The total amount owing on the loan is $595,428.02, plus attorneys' fees and costs in the amount of $80,789.40 detailed below.
>
> 4. The principal balance owing on the Loan is $285,979.16. As of January 14, 2014, there was $122,952.49 in interest owing. Interest continues to accrue daily at a rate of $40.9109076 per day. There is $9,828.50 in late charge[s] owing on the Loan. There is also owing under the Loan, $144.00 in fees and a prepayment penalty of $176,523.87.
>
> 5. As of January 31, 2014, Sterling Bank has paid attorney fees and legal costs in the amount of $80,789.40 in connection with enforcing and collecting the amounts owed under the Loan and pursuant to the Guaranty from Mr. Xu and Mrs. Chen.

Although Sterling attempted to recover this same sum from Parkridge under its promissory note with the company, it never recovered the loan deficiency from Parkridge because the court invalidated the promissory note and deed of trust based on Sterling's failure to discover Xu's fraudulent conduct. Sterling did not recover the loan deficiency from the proceeds of the receiver's sale. Nor did Sterling recover the loan deficiency from Xu. There is no factual basis in this record from which to conclude that enforcement of the summary judgment against Xu would cause a "double recovery."

Xu alternatively argues that he cannot be liable under the guaranty because Sterling released Parkridge from that obligation and this release discharges him from any further responsibility for the debt. Judgment Services contends the stipulated judgment, in which Sterling relinquished its claim for a deficiency judgment against Parkridge if Parkridge prevailed in invalidating the promissory note, did not constitute a release.

We question whether, by signing the stipulated judgment, Sterling actually intended to release Parkridge from liability for the loan deficiency, or if it merely intended to acknowledge that if it lost its right to enforce the promissory note and deed of trust at trial, it would be precluded as a matter of law from recovering the loan deficiency from Parkridge. But we need not resolve this issue because even if Sterling released Parkridge of the obligation to pay the loan deficiency owing under the promissory note, that release did not discharge Xu's obligations as guarantor under the separate personal guaranty.

Under *Union Bank, N.A. v. Blanchard*, 194 Wn. App. 340, 352, 378 P.3d 191 (2016), a personal guaranty is independent of the promissory note and is governed by its own terms. "Where a guarantor freely and voluntarily guarantees the payment of another, and the creditor relies to its detriment on this guaranty, the law generally requires the guaranty to be enforced." *Id.* at 352 (quoting *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269, 278, 892 P.2d 98 (1995)). Absolute and unconditional guarantees are enforceable, as are provisions within a guaranty waiving claims or defenses. *Id.* In *Freuhauf Trailer Co. of Canada, Ltd. v. Chandler*, 67 Wn.2d 704, 709, 409 P.2d 651 (1966), our Supreme Court upheld

- 14 -

a provision in a guaranty in which the guarantor waived the right to argue that a discharge or release of the principal debtor constituted a discharge or release of the guarantor.

Xu signed a guaranty in which he waived the right to claim that his obligation to pay Sterling was discharged by operation of law when a trial court invalidated the underlying promissory note. Xu unequivocally agreed that he would remain liable to repay the debt in full, even if Parkridge was discharged or relieved of liability under the note and deed of trust. This waiver is valid.

Xu, acknowledging the validity of the waiver in the guaranty, nevertheless argues that he is entitled to an offset equal to the "value" Sterling received from Parkridge in the stipulated judgment under either RCW 4.22.060 or the Restatement (Third) of Suretyship and Guaranty § 39(c). The trial court agreed with this argument below. We do not.

Under RCW 4.22.060,

> (2) *A release*, covenant not to sue, covenant not to enforce judgment, or similar agreement *entered into by a claimant and a person liable discharges that person from all liability for contribution*, but it does not discharge any other persons liable upon the same claim unless it so provides. However, *the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable* at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

(Emphasis added.) Xu contends that, under this provision of Washington's Tort Reform Act, he is entitled to a reduction of the amount of money he owes Sterling equal to the amount Parkridge paid Sterling in exchange for a release of liability.

There are several problems with this argument. First, in order for RCW 4.22.060(2) to apply here, Sterling would have had to assert a claim for negligence against both Xu and Parkridge for which they were jointly liable because the statute creates a right of contribution between *joint tortfeasors*. *Villas at Harbour Pointe Owners Ass'n v. Mutual of Enumclaw*, 137 Wn. App. 751, 758, 154 P.3d 950 (2007). The act does not apply to claims for fraud. *See Porter v. Kirkendoll*, 194 Wn.2d 194, 205, 449 P.3d 627 (2019) (tort reform act does not provide a right of contribution for intentional torts, citing RCW 4.22.015, which omits intentional torts from the definition of fault for the purposes of the tort reform act). Sterling obtained a judgment against Xu for fraud, not for a claim arising out of negligence. The statute does not give Xu a right of contribution against Parkridge for his own fraud.

Second, while Sterling initially asserted a claim of negligent misrepresentation against both Xu and Parkridge, its theory of liability against Parkridge was premised on Xu's actions as the alleged agent of Parkridge. It is clear from Sterling's pleadings that it based the negligent misrepresentation claim on Xu's statement that his limited liability company, Longwell, was the sole member of Parkridge and was fully authorized to enter into loans on behalf of Parkridge. Sterling litigated whether Xu had the authority to make such representations as Parkridge's agent and failed to prevail on that claim. The trial court found:

> FINDING OF FACT NO. 27: In approving the Loan, Sterling relied entirely upon Xu's statements and the documents he provided to determine Xu's authority to act to bind [Parkridge].
>
> . . . .

- 16 -

FINDING OF FACT NO. 50: Sterling approved the loan based upon the false information that Xu provided.

. . . .

FINDING OF FACT NO. 53: Parkridge never represented to Sterling that Xu or Longwell were authorized to enter into the Loan. Parkridge never provided Sterling with an Authorizing Resolution, signed by CFD Funding and Longwell, authorizing Xu and Longwell to enter into the Loan or sign the Deed of Trust on Parkridge's behalf. Before making the Loan, Sterling did not read or rely upon the authentic Parkridge LLC Agreement.

. . . .

FINDING OF FACT NO. 90: Before trial, Sterling filed a motion for summary judgment against Xu "for breach of guaranty and fraud." Sterling alleged in its motion that Xu (1) made numerous false, material representations to Sterling to induce it to make the Loan; (2) submitted a false operating agreement for Parkridge to induce the Loan; (3) falsely represented that Longwell was Parkridge's sole member; (4) falsely represented that they were authorized to enter into the Loan on Parkridge's behalf; and (5) did not have the authority to enter into the Loan. The Court granted Sterling's motion. Sterling did not assert or argue that Charles Diesing or CFD gave Xu/Chen or Longwell permission or authority to obtain the Sterling loan until closing argument.

The trial court concluded that Xu had no actual or apparent authority to sign the promissory note and deed of trust on Parkridge's behalf. Thus, Parkridge could not be a joint tortfeasor with Xu because the trial court found Parkridge had committed no tort. Xu thus had no right to contribution against Parkridge and no right under RCW 4.22.060(2) to a reduction in Sterling's claim against Xu.

Third, RCW 4.22.060(2) does not confer a right to an offset when parties settle breach of contract claims. Relying on *Heights at Issaquah Ridge Owners Ass'n v. Derus Wakefield I, LLC*, 145 Wn. App. 698, 704, 187 P.3d 306 (2008), Xu contends that this statute applies to cases involving contract liability. We disagree.

In that case, a condominium owners association settled a construction defect lawsuit against a developer under the Washington Condominium Act, chapter 64.34 RCW. *Id.* at 701. The developer filed a third-party claim against its general contractor based on an indemnification provision in their contract. *Id.* The association, developer, and general contractor then entered into a settlement agreement in which the developer and contractor assigned to the association any claims for coverage or bad faith they had against their respective insurers. *Id.* at 702. The association and developer filed a motion to determine the reasonableness of their settlement. The developer's insurer, Steadfast, intervened and the court found the settlement reasonable. *Id.*

The sole issue on appeal was whether the test for determining the reasonableness of a settlement agreement under RCW 4.22.060 should be extended to construction defect cases in which liability was based on statute and contract. *Id.* at 704-05. We held it did not because "comparative fault has no role in construction defect cases that involve contractual obligations to indemnify." *Id.* at 704. We concluded that, while a reasonableness hearing is appropriate, the nature of constructive defect cases required "a different approach to determining reasonableness." *Id.* at 704. We pointed out that the settlement was an accurate representation of the statutory or contractual liability of each party, "not double recovery from joint tortfeasors." *Id.* at 706. *Heights at Issaquah* did not extend a right of contribution under RCW 4.22.060 to parties who settle contract-based claims.

The trial court similarly erred in relying on section 39 of the Restatement of Suretyship to discharge Xu from liability for his fraudulent conduct. Subsection 39(c)(i) provides that, where a creditor releases the principal debtor from its duties pursuant to the underlying obligation, "if the secondary [debtor] is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b),[5] the secondary [debtor] is discharged from those duties to the extent . . .of the value of the consideration for the release." Restatement (Third) of Suretyship and Guaranty § 39 (1996).

Xu argues that under subsection (c)(i), his obligation to pay the loan deficiency amount was discharged "to the extent of the value of the consideration" Sterling received from Parkridge in the stipulated judgment.

There are several problems with this argument as well. First, Xu failed to present any evidence that Parkridge paid Sterling anything of value to avoid having to pay the loan deficiency. Indeed, Sterling litigated Parkridge's liability under the promissory note and deed of trust, but lost that claim at trial because the court found Parkridge was not liable for Xu's fraud.

Xu refers to the fact that under the stipulated judgment, Parkridge agreed that Sterling's liability would not exceed Sterling's title insurance. Xu argues that this provision of the stipulated judgment had to have some value to Sterling. This

---

[5] Subsection (b) states:
> (b) the secondary [debtor] is discharged from any unperformed duties pursuant to the secondary obligation unless:
> (i) the terms of the release effect a preservation of the secondary [debtor]'s recourse (§ 38); or
> (ii) the language or circumstances of the release otherwise show the [creditor]'s intent to retain its claim against the secondary [debtor].

argument is speculative at best. We have no record that Parkridge ever asserted a claim against Sterling for an amount greater than its insurance coverage. We have no record of Sterling's policy and no factual testimony regarding the limits of that policy. We therefore find no basis in the record for attributing any value to this provision of the stipulated judgment.

Second, Xu's liability to Sterling was reduced to judgment on April 4, 2014, *before* Parkridge and Sterling entered into the stipulated judgment. Xu provides no legal authority for the proposition that a secondary debtor's liability, already reduced to judgment, can be discharged by subsequent litigation between a creditor and the primary debtor.

Finally, even if the law of suretyship required us to conclude that Xu's obligation under the personal guaranty was discharged to some extent, the April 4, 2014 summary judgment's findings of fraud against Xu would be unaffected. Xu presents no authority for the proposition that section 39 of the Restatement of Suretyship discharges a secondary debtor for liability based on that debtor's own fraudulent conduct.

The trial court's findings are not supported by the record and its legal conclusion that the April 4, 2014 summary judgment was satisfied, released, or discharged is not supported under Washington law. We therefore reverse the March 8, 2022 order for discharge.

<u>Entry of a Judgment Summary</u>

Because the trial court erroneously discharged the April 4, 2014 judgment against Xu, we address Xu's cross appeal and conclude that CR 54(e) does not

preclude a trial court from converting the summary judgment order into a judgment with a judgment summary.

Xu argues that Judgment Services' motion was untimely because CR 54(e) requires litigants to seek entry of a judgment within 15 days of a court ruling. We reject this contention.

CR 54(e) provides in pertinent part: "The attorney of record for the prevailing party shall prepare and present a proposed form of order or judgment not later than 15 days after the entry of the verdict or decision, or at any other time as the court may direct."

Sterling filed its motion for summary judgment against Xu on February 28, 2014 and noted it for hearing on March 28, 2014. It submitted a proposed order with its motion. The court signed the summary judgment order on April 4, 2014, within 15 days of the summary judgment hearing. This summary judgment order was filed with the clerk the same day and became effective as a judgment upon filing. CR 58(b) ("Judgments shall be deemed entered for all procedural purposes from the time of delivery to the clerk for filing").

In 2016, when Chicago Title sued Xu, the trial court held that the April 4, 2014 summary judgment became a final judgment on June 6, 2014, after entry of the Parkridge judgment. This legal ruling is consistent with CR 54(e), which provides that a judgment that adjudicates fewer than all the claims pending in the same action becomes final upon entry of judgment adjudicating all outstanding claims. *See Fox v. Sunmaster*, 115 Wn.2d 498, 502, 798 P.2d 808 (1990) (party against whom summary judgment order was entered could wait to appeal that

order until all claims against all defendants were dismissed). Thus, the April 4, 2014 order on summary judgment was a "judgment" when it was filed that same day and a "final judgment" on June 6, 2014.

Xu suggests the order granting summary judgment against him was not a "judgment." We disagree. The language of the summary judgment order itself is clear. It clearly says "Sterling Bank is granted judgment against Stanley Xu and Nanling Chen."

Moreover, our Supreme Court has held that the validity of a judgment does not depend on whether it contains a judgment summary. In *Bank of Am., N.A. v. Owens*, 173 Wn.2d 40, 266 P.3d 211 (2011), the court was asked to determine whether two orders—one awarding attorney fees and one ordering the distribution of proceeds from a sale of property—were effective judgments. *Id.* at 51-52. In arguing against the enforcement of those judgments, Bank of America argued that they were ineffective because they lacked judgment summaries, as required by RCW 4.64.030. *Id.* at 52. The Bank relied on the language from subsection (3) that "[t]he clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section," to argue that a judgment lacking a judgment summary is not valid and could not create a lien on property. *Id.* at 53.

The Supreme Court rejected this argument. The court noted that the legislature generally uses the term "entry of judgment" to indicate the point at which a judgment is entered into the official records of the court and becomes effective. *Id.* at 53-54. Judgments, however, are entered and take effect on delivery to the

clerk's office. *Id.* at 54 (citing CR 58(b)). It concluded that the legislature's use of the word "enter" in RCW 4.64.030 indicated placement of the judgment by the clerk into its execution docket and not delivery to the clerk. *Id.* It held that judgments are valid when signed by the court and delivered to the clerk and the lack of a judgment summary merely prevents the clerk from entering a judgment into its execution docket, but does not affect its validity. *Id.*

The April 4, 2014 order granting summary judgment is a valid judgment despite the lack of a judgment summary.

Neither RCW 4.64.030 nor CR 54(e), on which Xu relies, supports his contention that the trial court cannot add a judgment summary to an otherwise valid judgment because of the passage of time. First, RCW 4.64.030 sets no deadline for obtaining a judgment summary. RCW 4.64.030 states:

> (1) The clerk shall enter all judgments in the execution docket, subject to the direction of the court and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action.
>
> (2)(a) On the first page of each judgment which provides for the payment of money . . . the following shall be succinctly summarized: The judgment creditor and the name of his or her attorney, the judgment debtor, the amount of the judgment, the interest owed to the date of the judgment, and the total of the taxable costs and attorney fees, if known at the time of the entry of the judgment.
>
>     . . . .
>
> (3) . . . . The clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section.

This provision contains no time limit for presenting a judgment summary to the court.

Second, Xu's argument that a judgment summary is subject to the 15-day provision in CR 54(e) appears contrary to other provisions of Washington law. Parties have up to twenty years to collect a judgment. Under RCW 6.17.020(1),

> *the party in whose favor a judgment of a court has been or may be filed* or rendered, or the assignee or the current holder thereof, *may have an execution*, garnishment, or other legal process issued for the collection or enforcement *of the judgment at any time within ten years from entry of the judgment* or the filing of the judgment in this state.

(Emphasis added.) RCW 6.17.020(3) permits a judgment creditor to extend a judgment for a second ten-year period. It makes no sense that a judgment creditor has such a lengthy period of time in which to enforce a judgment, but has only 15 days after a court ruling to obtain a judgment summary. The 15-day deadline of CR 54(e) does not apply here.

Finally, Xu has not demonstrated any prejudice from this delayed amendment. Judgments entered in spite of a procedural error are valid unless the complaining party shows resulting prejudice. *See Burton v. Ascol*, 105 Wn.2d 344, 352, 715 P.2d 110 (1986) ("A judgment entered without the notice required by CR 54(f)(2) is not invalid, however, where the complaining party shows no resulting prejudice."). Xu has not shown prejudice here. The failure to include a judgment summary for seven years did not prevent Xu from appealing that judgment or seeking to vacate it if he believed he had a basis for doing so.

Neither RCW 4.64.030 nor CR 54(e) precludes the court from entering a judgment summary for the April 4, 2014 judgment against Xu.

As Xu is no longer the prevailing party, we also reverse the order awarding attorney fees to Xu.

- 24 -

<u>Conclusion</u>

We affirm the January 5, 2022 revised judgment with a judgment summary against Xu. We reverse the March 9, 2022 order granting Xu's amended motion for a discharge of the order granting summary judgment. We reverse the April 4, 2022 order granting Xu's petition for attorney fees. We remand to the trial court to address Judgment Services' motion to determine the applicable post-judgment interest rate.

Andrus, J.P.T.

WE CONCUR:

Díaz, J.

Dwyer, J.